# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. |
| v. | 2:24-cr-2-RWS |
| RAYMOND VANDIVER AKINS, | |
| Defendant. | |

_____

## **ORDER**

This matter is before the Court on the March 27, 2025 Order and Final Report and Recommendation ("R&R") of U.S. Magistrate Judge J. Clay Fuller [Dkt. 45], and timely written Objections ("Obj.") from Defendant Raymond Vandiver Akins ("Akins") [Dkt. 47]. The Government did not file a response to Akins' Objections.

Akins, through counsel, moved to suppress evidence seized by law enforcement from his residence, a property located at 2454 Dry Branch Road, Blue Ridge, Georgia 30513, located within Fannin County [Dkts. 20, 25, 35] and from his phones, video recorder, and laptop [Dkts. 18, 38; 21, 39]. Akins also sought to

suppress statements made to law enforcement in April and May 2023 following another arrest.

On December 9, 2024, Judge Fuller presided over an evidentiary hearing. [Dkt. 33 – 12-9-24 Hearing Transcript ("Tr.")]. The parties submitted post-hearing briefs on all issues and amended motions as necessary.

Judge Fuller recommends that Defendant's Motions and Amended Motions to Suppress Evidence [Dkts. 18, 38; 20, 25, 35; 21, 39] be denied and that Defendant's Motions and Amended Motions to Suppress Statements [Dkts. 19, 36; 22, 37] be denied as moot.

Having reviewed the record, the Court enters the following Order approving and adopting the R&R.

## LEGAL STANDARD

In reviewing a Report and Recommendation ("R&R"), the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847

F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted).  Absent

objection, the district judge "may accept, reject, or modify, in whole or in part, the

findings and recommendations made by the magistrate [judge]," 28 U.S.C. §

636(b)(1), and "need only satisfy itself that there is no clear error on the face of the

record" in order to accept the recommendation.  FED. R. CIV. P. 72, advisory

committee note, 1983 Edition, Subdivision (b).  In accordance with 28 U.S.C. §

636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has

conducted a *de novo* review of those portions of the R&R to which Plaintiff objects

and has reviewed the remainder of the R&R for plain error.  See United States v.

Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## DISCUSSION

On January 23, 2024, Akins was indicted by a federal grand jury seated in

the Northern District of Georgia and charged with possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 924(g)(1) (Count One), possession

with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)

(Count Two), and possession of a firearm in furtherance of a drug trafficking

crime, namely, the drug offense alleged in Count Two, in violation of 18 U.S.C. §

924(c)(1)(A)(i) (Count Three). [Dkt. 1].

At the time, Akins was under the supervision of the State of Georgia for a felony conviction of cruelty to children in the first degree. On October 29, 2015, Akins was sentenced to ten years, with the first four years to be served in confinement and the remaining six years to be served on probation. [Dkt. 28, Govt. Hr'g Exhibit 1 – Fannin County, State of Georgia Final Disposition Felony Sentence with Probation ("State Court Sentence")]. While on probation, Akins' supervising probation officer was Rodney Brett James ("Officer James"), Department of Community Supervision, State of Georgia ("DCS"). The R&R details the general conditions of Akins' probation. [R&R at 4; State Court Sentence]. As relevant here, Akins was required to "permit the Probation Officer to visit [him] at home or elsewhere." [State Court Sentence at 3]. A special condition of probation was noted as "4th Amendment waiver" but there was no separate form or waiver attached. [Id. at 4]. In addition, because Akins was convicted of a felony, both state and federal law prohibited Akins from possessing a firearm of any kind. [Id.]. Akins, who was represented by counsel, acknowledged that he was aware of the terms of his sentence and understood "the meaning of the order of probation and the conditions of probation[,]" as well as the consequences for any violation. [Id.].

On November 8, 2023, law enforcement conducted a search of Akins'
residence, 2454 Dry Branch Road, Blue Ridge, Georgia. [Dkt. 28-1, Gvmt. Hr'g
Exhibit 3 -- Search Warrant No. 2023SW48 ("SW48")]. Pursuant to the search,
law enforcement seized 13.6 kilograms of methamphetamine, 1 pound of
marijuana, $8,875 in U.S. currency, drug paraphernalia, including digital scales,
baggies for packaging, and smoking pipes, phones, cameras connected to a video
recorder, and a laptop computer.

Earlier the same day, at 8:57 a.m., John Leslie Cheek, an investigator with
the Fannin County Sheriff's Office assigned to the GBI Appalachian Regional
Drug Enforcement Office ("Agent Cheek") obtained a search warrant from a
Fannin County Magistrate Judge for Akins' residence. [Tr. at 64; Dkt. 30 – Gvmt.
Hr'g Exhibit 4 – Search Warrant No. 2023SW47 ("SW47")]. This search warrant
was returned unexecuted later the same day by Agent Cheek. [Tr. at 35, 88].[1]
Because the first search warrant was never executed, only the information
possessed by law enforcement is relevant to the instant analysis. [R&R at 10

---

[1] Agent Cheek elected not to execute SW47 to protect the identity of the
confidential informant providing the information about Akins. [Tr. at 66].

(assuming initial search or walk through for safety did not occur pursuant to SW47)].[2]

On May 8, 2023, Agent Cheek obtained a third search warrant authorizing the search of Akins' cell phone.  [Dkt. 38-1 -- Search Warrant No. 2023SW23 ("SW23")].  Akins' cell phone had been seized earlier by a Blue Ridge Police Department Officer on or about April 28, 2023, following a traffic stop and arrest on a violation of probation warrant. [SW23 at 4].

On November 22, 2023, Agent Cheek obtained a fourth search warrant authorizing the search of electronic devices seized during the search of Akins' house on November 8, 2023. [Dkt. 39-1 – Search Warrant No. 2023SW50 ("SW50")]. The items seized included a blue Motorola cell phone, a black Motorola cell phone, a digital video recorder, and a laptop computer. The affidavit submitted in support of the search warrant discussed statements Akins made to law enforcement in April and May 2023 without being advised of his *Miranda* rights.[3] [SW50 at 6].

---

[2] While not necessary to the Court's analysis, this information obtained by law enforcement is likely a sufficient independent basis to supply reasonable suspicion to search Akins' residence.

[3] See Miranda v. Arizona, 86 S. Ct. 1602 (1966).

The Court turns now to Akins' objections to the R&R. While largely duplicative of the arguments raised before the magistrate judge, the Court treats the objections as specific objections, and, therefore, has conducted a *de novo* review.

## I.    Search of Akins' Residence

Akins moved to suppress the evidence seized in the November 8, 2023 search of his residence located at 2454 Dry Branch Road.

Akins objects to the search of his residence and evidence seized thereafter on two primary grounds, namely, that the Magistrate Judge erred in finding: (1) that the officers conducting the search, including DCS Officer James, Agent Cheek, and Dustin Carder, an investigator with the Fannin County Sheriff's Office and Task Force Officer with the FBI Safe Street Task Force ("Investigator Carder"), possessed reasonable suspicion that illegal activity was occurring at the house; and (2) that the DCS was permitted to search the residence based on a provision in his state sentence stating that law enforcement could visit Akins at his house. [Dkt. 28 at 3].

It is undisputed that Officer James did not ask Akins for consent to search but advised Akins that he was going to walk through the house to ensure no one

else (and no other weapon) was present that could pose a risk and to see if Akins was compliant with the conditions of supervision.[4]

The gravamen of Akins' objection is that information gleaned during the walk through of the house and relied upon by the Fannin County Sheriff's Department in securing the second search warrant, SW48, was obtained unlawfully.

The Court agrees with Judge Fuller's conclusion that Officer James and the accompanying law enforcement officers possessed reasonable suspicion to conduct a limited search of Akins' house as a safety measure once they entered the house given the strong odor of marijuana and the firearm(s) in plain view and within close proximity to Akins.

### A. Officer James was authorized to conduct a compliance visit and safety check of Akins' residence

The Court first addresses the authority of Officer James to make a compliance visit to Akins' residence on the morning of November 8, 2023. As Akins' supervising CSD Officer, James was tasked with enforcing the terms and conditions of Akins' state court probationary sentence and had the authority to visit

---

[4] As explained herein, consent was not required because the officers conducting the search had reasonable suspicion that Akins was engaging in criminal activity and violating multiple conditions of probation.

Akins' residence unannounced. Moreover, as a special condition to being under probation, Akins waived the ability to challenge any search or seizure under the Fourth Amendment.

### 1. Judge Fuller did not rely on the Fourth Amendment waiver special condition of probation

The Government's primary contention is that the Fourth Amendment waiver provides a sufficient lawful basis for the initial "search" of the property.[5] [Dkt. 41, at 7 (arguing, in the alternative, that the Government can show that reasonable suspicion existed to conduct initial search)]. Arguably, the Government is right. See Owens v. Kelley, 681 F.2d 1362, 1367–69 (11th Cir. 1982) (deciding as matter of first impression whether condition of probation providing for warrantless searches of defendant's person and property is constitutional, upholding Fourth Amendment waiver as condition of probation, and declining to impose reasonable suspicion requirement in addition to probation condition permitting warrantless searches of probationer and probationer's property); see also United States v. Spence, 2018 WL 2931956, at *2-3 (N.D. Ga. June 12, 2018) (overruling objections to R&R and upholding warrantless search with no probable cause or

---

[5] Throughout briefing, the Government also describes Officer James' initial walk through as a "safety check."  [Dkt. 41 at 3].

reasonable suspicion requirement based upon parole certificate requiring parolee to submit to a search "at any time" without a warrant) (citation omitted).[6] However, the undersigned need not reach that issue.

Rather than rely solely on a waiver of Fourth Amendment protections as a special condition of Akins' state sentence, Judge Fuller found that any Fourth Amendment waiver was not determinative given other information law enforcement possessed and given Akins' status as a convicted felon and probationer. [R&R at 4 (citing Tr. 25-26 and Dkt. 28 at 1-4)].  In other words, as a probationer, Akins' expectation of privacy was not that of an ordinary, law-abiding citizen.

---

[6] The Government also cites to United States v. Denton, Civil No. 1:11-cr-546-AT-RGV, which also involved a Fourth Amendment waiver that read in part:

> The defendant must, at any time, without warning, probable cause, articulable suspicion or a search warrant, provide a sample of blood, urine, breath and/or saliva and submit to searches of his/her residence, workplace, vehicle, containers, records, and all other locations and items, by any law enforcement officer, probation officer or parole officer.

[See Dkt. 32 – 6-19-12 Report & Recommendation ("R&R"), at 10, 11 and n.10; and Dkt. 41 – 9-5-12 Order Adopting R&R]. The facts in Denton are not on all fours as the record was more fully developed concerning the defendant-state probationer's understanding of the Fourth Amendment waiver provision.

### 2. Judge Fuller did not construe any of Akins' conditions of probation as consent to search

Akins argues that a condition of supervision permitting his supervising probation officer *to visit defendant at his home or elsewhere* is not the same as providing consent to search. [Obj. at 7]. The Court agrees. As explained thoroughly in the R&R, Judge Fuller found that Akins' conditions of probation authorized a home visit and initial entry. See, e.g., United States v. Wasser, 586 F. App'x 501, 505 (11th Cir. 2014) (initial entry to residence did not violate Fourth Amendment given condition of probation permitting probation officer to conduct compliance visit). Judge Fuller did not construe this authority as a consent to a cart blanche search. Judge Fuller correctly found that Officer James had authority to enter the residence without a warrant and without first obtaining consent. [R&R at 12].

### B. As a probationer, Akins' has a diminished expectation of privacy under the Fourth Amendment

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

When a seizure is made without a warrant, the burden is on the Government to "demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement" and is therefore reasonable within the meaning of the Fourth Amendment. United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983). The reasonableness inquiry requires an examination of "the totality of the circumstances." United States v. Knights, 122 S. Ct. 587, 591 (2001) (quoting Ohio v. Robinette, 117 S. Ct. 417, 421 (1996)); Samson v. California, 126 S. Ct. 2193 (2006) (evaluating law enforcement's ability to conduct search of parolee without having reasonable suspicion that parolee was engaged in unlawful behavior and where parolee was subject to Fourth Amendment waiver imposed by state law).[7]

Considering the totality of the circumstances, Akins' status as a convicted felon and probationer is key. "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." Knights, 122 S. Ct. at 591 (citation omitted). "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every

_____

[7] Samson is distinguishable because 1) Samson was a parolee subject to California state law providing that parolees "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause[;]" and 2) the search was admittedly conducted without reasonable suspicion.

citizen is entitled." Id. (citation and internal quotation marks omitted); accord Owens, 681 F.2d at 1368 (discussing government's legitimate interest in protecting the public and minimizing risk of recidivism); see also Wasser, 586 F. App'x at 504.

While Fourth Amendment protections are available to Akins, probationers "have a diminished expectation of privacy." Owens, 681 F.2d at 1367–68 (citations omitted); and see United States v. Carter, 566 F.3d 970, 973 (11th Cir. 2009) (citation omitted). In United States v. Carter, the Eleventh Circuit applied this rationale to uphold the warrantless search of a probationer and hold that the search "need only be supported by reasonable suspicion to be reasonable under the Fourth Amendment." 566 F.3d at 973 (citation omitted). The Eleventh Circuit considered the fact that the probationer was not subject to a special condition of probation permitting warrantless searches but explained that "Carter's expectation of privacy was nevertheless reduced by the condition of probation requiring him to submit to home visits by his probation officer." Id. at 974-75.

The same is true here because Akins was subject to a condition of probation authorizing Officer James to conduct home visits.

## C. Reasonable suspicion supported the initial search of Akins' residence

The Court agrees with Judge Fuller that, once Officer James entered Akins' house, detected an odor of marijuana and was able to observe firearms in plain view, Officer James had reasonable suspicion that Akins was engaging in criminal activity and in violation of the terms of probation. [R&R at 12-18].

"Reasonable suspicion consists of a sufficiently high probability that criminal conduct (or conduct in violation of probation conditions) is occurring to make the intrusion on the individual's privacy interest reasonable." United States v. Holland, 2020 WL 5229041, at *5 (N.D. Ga. Mar. 26, 2020) (citation omitted), report and recommendation adopted, 2020 WL 3097412 (N.D. Ga. June 11, 2020), aff'd, 2023 WL 7321612 (11th Cir. Nov. 7, 2023).

In this case, evidence was presented that Officer James decided to conduct the home visit at Akins' residence on November 8, 2023 because he learned of an arrest that Akins did not disclose in the preceding months. Officer James had also received information from the Fannin County Sheriff's Office that Akins was reportedly "known to be selling drugs" and suspected of storing methamphetamine and marijuana at his residence. [Tr. 7-8, 11-12]. Officer James testified that once he went into Akins' house, he detected "a strong odor of marijuana and saw firearms in the house[,]" including a gun propped up against the wall next to the

14

door approximately three to five feet away.  [Tr. at 11, 13-14]. Officer James'

testimony is corroborated by the testimony of Agent Cheek and Investigator

Cardin. [Tr. at 11, 13-14, 45; Govt. Hr'g Exhibit 2].

The Court finds that law enforcement's need to guarantee safety and Officer

James' obligation to investigate any violations of probation trump Akins' reduced

privacy interest. After spotting a firearm Akins was not permitted to possess and

conducting a safety walk through of Akins' home, the officers deduced that illegal

activity was afoot and that Akins was in violation of multiple conditions of his

probation. At that point, it was permissible for Officer James and the other officers

to look through the house for other persons who might pose a threat as well as any

other weapons that could be accessed by Akins.[8] [Tr. at 14, 23, 31-32, 45-46].

Judge Fuller credited the testimony of the law enforcement witnesses that no

search was conducted until after Officer James was advised that SW48 had been

secured. [Tr. at 17-18, 49]. Prior to a more intrusive search, Agent Cheek secured

the house and obtained a warrant, i.e., SW48. [Tr. at 16].

---

[8] While marijuana was, in fact, discovered during the initial search, and Akins
makes much of the fact that law enforcement looked into the garbage bag
containing individual baggies of marijuana, Investigator Carder testified that he
only manipulated the bag slightly to show Officer James the contents. [Tr. at 46,
54-55].

"The reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 122 S. Ct. at 591 (citation omitted); accord Carter, 566 F.3d at 973-74 (citations omitted); see also Owens, 681 F.2d at 1367–69.

For the stated reasons, the Court concurs with Judge Fuller that Officer James and the other law enforcement officers had reasonable suspicion to conduct the initial search (or safety check) of Akins' residence prior to obtaining SW48. And, given the government's legitimate interests, the officers' initial search did not violate the Fourth Amendment.

Akins' objection concerning reasonable suspicion to support the initial search of his residence is overruled.

### D. SW48 was supported by probable cause, and its execution was reasonable

Next, Akins challenges the R&R's finding and legal conclusion that SW48 was supported by probable cause. Akins specifically objects to Agent Cheek's Affidavit containing a description of certain statements Akins made to law enforcement and posits that, *absent the statements*, there can be no finding of probable cause to search. Because the Court finds that the statements were properly

considered, among other evidence, in evaluating probable cause, this objection also lacks merit.

"Probable cause" is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983).

Affidavits supporting warrants are presumptively valid. Franks v. Delaware, 98 S. Ct. 2674 (1978). "Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." United States v. Kilgore, 2012 WL 5334298, at *4 (N.D. Ga. Sept. 13, 2012), report and recommendation adopted, 2012 WL 5305146 (N.D. Ga. Oct. 26, 2012).

The defendant's burden is heavy given the deference given to a search warrant authorized by a judicial officer. See United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994) ("reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations"); United States v. Leon, 104 S. Ct. 3405, 3416 (1984) (noting preference for warrants and "great deference to a magistrate's determination"). Deference is appropriate because in determining whether probable cause exists, the issuing judicial officer "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in

the affidavit ..., there is a fair probability" that "an offense has been committed and that evidence exists at the place for which the warrant is requested." <u>Miller</u>, 24 F.3d at 1361 (quoting <u>Gates</u>, 103 S. Ct. at 2332).

Agent Cheek was the affiant who provided the particularized facts in support of the application for SW48. Agent Cheek detailed his observations as well as those of Officer James and Investigator Cardin from the earlier, more limited search or safety check of Akins' residence. Agent Cheek's affidavit described the discovery of marijuana, drug-related items, and firearms in the house. These sworn statements were more than sufficient to supply probable cause to search.

Akins' objection to the 11-8-23 Cheek Affidavit statement concerning the odor of marijuana being detected upon entry is without merit. Akins appears to suggest that this statement is not credible. Akins points to the testimony of DCS Officer James and his failure to immediately comment on the odor of marijuana to imply that the law enforcement officers present did not report this observation accurately. [<u>See</u> Tr. at 41-43; R&R at 13, n.5]. Again, Officer James, along with Agent Cheek and Investigator Carder, all testified that an odor of marijuana was

18

detected immediately upon entry of Akins' residence and that at least one firearm was in plain view from the doorway and visibly unsecured.[9]

In addition, the 11-8-23 Cheek Affidavit states that multiple firearms were seen in plain view when they initially walked through the house and that it was known that, because Akins was a convicted felon, Akins was not permitted to be in possession of firearms.

Moreover, the evidentiary record establishes that there was nothing unreasonable about the execution of SW48.[10] Officer James was at Akins' residence to follow up on information concerning possible violations of probation by Akins and new criminal conduct. While armed, Officer James and the other law enforcement officers present did not draw their weapons, Akins was never handcuffed while the officers pursued the second search warrant, and there is no evidence of coercion or force, no intimidation or harassment. [Tr. at 68-80].

---

[9] Carder testified that, as he entered the house, he observed the same firearm seen by Officer James and Agent Cheek (the unsecured firearm leaning against the doorway), plus a gun cabinet with multiple firearms inside. [Tr. at 45]. In addition, when he walked through the house, Carder discovered a clear, gallon-sized Ziploc bag of marijuana and an open trash bag with multiple vacuum-sealed bags of marijuana. [Tr. at 46, 54-55].

[10] Akins does not appear to assert that the manner and/or actual execution of SW48 was unreasonable.

In conclusion, Officer James had authority to enter Defendant Akins'
residence. Once lawfully inside Akins' residence, James and the other officers had
reasonable suspicion that Akins was engaging in criminal activity and violating the
terms of his probation based on the totality of the circumstances, including
information Officer James and law enforcement possessed that prompted the visit
on November 8, 2023, plus their observations made upon lawful entry into the
house, i.e., the strong odor of marijuana and the presence of firearms. For these
reasons, the Court also agrees with Judge Fuller that SW48 was amply supported
by probable cause.

The Court overrules Akins' Objections related to the search of his residence
and the evidence seized pursuant to SW48.

## II.    Search of Cell Phone(s), Video Recorder, Laptop

Akins also objects to the Magistrate Judge's findings concerning the search
of his cell phone and other electronic devices pursuant to SW23 and SW50. While
there were two different warrants issued on different dates, the analysis is the
same.

Both search warrants were obtained by relying, in part, on unwarned
statements Akins made to Agent Cheek and Investigator Carder while in law
enforcement custody. Akins contends that, because his statements were not subject

to a waiver of his *Miranda* rights and made in response to custodial interrogation, they cannot be considered. [Obj. at 9]. Akins argues that, absent these unlawfully obtained statements, law enforcement had nothing to support the probable cause requirement and the search warrant for his cell phone. [Obj. at 12]. Akins further suggests, contrary to the Magistrate Judge's findings and legal conclusions, that exceptions to the exclusionary rule do not apply [Obj. at 13] and that Akins' statements were not made voluntarily [Obj. at 14].  The record does not support Akins' position.

The Court agrees with Judge Fuller that Akins' April and May 2023 statements to law enforcement were properly considered in evaluating probable cause and correctly analyzed as falling within an exception to the exclusionary rule.

The exclusionary rules provides that "[e]vidence seized as the result of an illegal search may not be used by the [G]overnment in a subsequent criminal prosecution." United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002) (citation omitted). "The exclusionary rule, as it is known, is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." Id. (internal quotation marks omitted).

Regarding SW23, Akins' statements to law enforcement were subsequent to the April 2023 traffic stop and arrest and after the arresting officer found a small quantity of methamphetamine and a smoking device in Akins' vest pocket. Agent Cheek interviewed Akins at the Fannin County Sheriff's Office on May 1, 2023, and at the Fannin County Courthouse on May 4, 2023. In these conversations, Akins disclosed to Cheek that he used his cell phone to communicate with the person supplying him with methamphetamine and with persons who he sold methamphetamine to.

With respect to statements included within the affidavit for SW50, during the November 8, 2023 search of Akins' residence, law enforcement seized additional electronic devices, including two cell phones, a video recorder, and a laptop. Agent Cheek's warrant affidavit in support of SW50 and the ability to search these electronic devices details the same statements Akins made in May 2023.

The Self–Incrimination Clause provides: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. As such, "the core protection afforded by the Self–Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." United States v. Patane, 124 S. Ct. 2620, 2626 (2004) (citing Chavez v. Martinez,

123 S. Ct. 1994 (2003)). "The Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements." Id. (citations omitted).

"The [G]overnment bears the burden of showing that [Akins'] in-custody statements were obtained in compliance with the dictates of *Miranda* and were otherwise voluntary, or that some exception to the *Miranda* rule applies." United States v. Lewis, 2022 WL 2784473, at *5 (S.D. Ga. June 9, 2022), report and recommendation adopted, 2022 WL 2340548 (S.D. Ga. June 29, 2022), aff'd, 2023 WL 6620313 (11th Cir. Oct. 11, 2023) (citing, *inter alia*, United States v. Chaidez-Reyes, 996 F. Supp. 2d 1321, 1345 (N.D. Ga. 2014)). As discussed in Lewis, "[w]hile statements made in violation of *Miranda* must generally be suppressed, failure to give *Miranda* warnings does not require suppression of physical fruits of a suspect's unwarned but voluntary statements." Lewis, 2022 WL 2784473, at *6 (quoting United States v. Jackson, 506 F.3d 1358 (11th Cir. 2007) (citing Patane, 124 S. Ct. at 2630).

Here, the record supports Judge Fuller's finding that Akins' May 2023 statements to law enforcement were voluntary.  [R&R at 27-29]. In determining whether a statement was made voluntarily, courts evaluate the "totality of the all the surrounding circumstances." Schneckloth v. Bustamonte, 93 S. Ct. 2041, 2047

(1973).  Agent Cheek testified that Akins agreed to speak with him during both

interviews and that there was no show of force. [Tr. at 68-80]. There is no evidence

or allegation by Akins that Agent Cheek extracted statements by way of threats or

violence or "the exertion of any improper influence." Harris v. Dugger, 874 F.2d

756, 761 (11th Cir. 1989). Judge Fuller credited Agent Cheek's uncontradicted and

sworn testimony and the fact that Akins directed that the interviews be conducted

in some other location than at the jail supports the voluntariness finding.

Accordingly, Akins' voluntary statements were properly considered within

the totality of circumstances equation and in support of probable cause.

The Court overrules Akins' objections to inclusion of this information.

## CONCLUSION

The Court agrees with Judge Fuller's legal analysis and the well-reasoned

R&R. Defendant Akins' Objections are overruled.

For the foregoing reasons, it is hereby **ORDERED** that Judge Fuller's R&R

[Dkt. 45] is accepted with approval and **ADOPTED** for all purposes.  It is

therefore **ORDERED** that Defendant's Motions and Amended Motions to

Suppress [Dkts. 18, 38; 19, 36; 20, 25, 35; 21, 39; 22, 37] are **DENIED.**

This matter will be calendared by the Courtroom Deputy for a Final Pretrial

Conference, and Jury Trial.

**SO ORDERED** this 5th day of June, 2025.

_____

**RICHARD W. STORY**
United States District Judge